IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01373-CNS-MDB

LOIS Y. DITTO and
CHARLES E. DITTO,

    Plaintiffs,

v.

SANOFI U.S. SERVICES, INC. *f/k/a* Sanofi-Aventis U.S., Inc., and
SANOFI-AVENTIS U.S. LLC,

    Defendants.

## ORDER

    This lawsuit involves a chemotherapy drug called Taxotere, commonly administered to patients diagnosed with breast cancer. Defendants Sanofi U.S. Services, Inc. and Sanofi-Aventis U.S., LLC (collectively Sanofi) manufacture, label, and distribute Taxotere. Plaintiff Lois Ditto was diagnosed with breast cancer, underwent surgery, radiation, and chemotherapy to treat her cancer, and, as part of her chemotherapy regimen, her doctors administered Taxotere. Ms. Ditto alleges that the drug—which she took in early 2009—caused her to suffer permanent hair loss. She filed this lawsuit in September 2017, asserting claims against Sanofi for negligence, strict liability, and fraud.

    This matter comes before the Court on Sanofi's Motion for Summary Judgment. ECF No. 52. Because the Court finds that all of the Dittos' claims are barred by the

applicable statute of limitations, Sanofi's motion is GRANTED.

## I. FACTUAL BACKGROUND[1]

Ms. Ditto is a 77-year-old woman who lives in Colorado. ECF No. 52, ¶ 1. She was diagnosed with breast cancer on November 12, 2008. *Id.*, ¶ 2. To treat her breast cancer, Ms. Ditto underwent surgery, radiation, and chemotherapy in Colorado. *Id.*, ¶ 3. As part of her chemotherapy regimen, Ms. Ditto was administered Taxotere, along with chemotherapy drugs Herceptin and Carboplatin, from January 21, 2009, to May 6, 2009. *Id.*, ¶ 4; ECF No. 53 at 6. "Taxotere is a chemotherapy drug administered to many who suffer primarily from breast cancer." ECF No. 6-26 (Second Amended Master Long Form Complaint and Demand for Jury Trial), ¶ 4. Ms. Ditto also received hormone replacement therapy from 2009 to 2014. ECF No. 53 at 6.

Ms. Ditto stated in discovery that since 2009, she has experienced persistent total alopecia, persistent alopecia of her head, "permanent/persistent hair loss on her scalp," diffuse thinning of hair on her scalp, changes in the texture and thickness of her hair, and permanent/persistent loss of her eyebrows, eyelashes, body hair, and genital hair. ECF No. 52, ¶ 8.

Plaintiffs' Complaint defines permanent hair loss—sometimes called permanent chemotherapy-induced alopecia (PCIA)—as the "absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." *Id.*, ¶ 7 (citing Second Amended

---

[1] The following factual recitation is drawn from Defendants' motion, ECF No. 52, Plaintiff's response, ECF No. 53, Defendants' reply, ECF No. 54, and certain exhibits accompanying each. For purposes of the analysis below, the Court construes these facts in the light most favorable to Plaintiffs, the non-moving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997).

Master Long Form Complaint and Demand for Jury Trial, ¶ 181).[2] For Ms. Ditto, as explained below, that would have been November 2009. *Id.*

Ms. Ditto began losing her hair after her first chemotherapy treatment on January 21, 2009, but she believed it was temporary in nature at the time. *Id.*, ¶ 10. She has worn a wig to conceal her hair loss since February 2009. *Id.*, ¶ 11. According to her "Fifth Amended Plaintiff Fact Sheet," which she was required to complete under oath, she alleged the following injuries beginning on February 5, 2009, to the present:

- "Persistent total alopecia – No hair growth on your head or body after six (6) months of discontinuing Taxotere® or Docetaxel treatment";

- "Persistent alopecia of your head – No hair growth on your head after six (6) months of discontinuing Taxotere® or Docetaxel treatment. Hair is present elsewhere on your body";

- "Permanent/Persistent Hair Loss on Scalp";

- "Diffuse thinning of hair: partial scalp [and total scalp]";

- "Change in the texture, thickness or color of your hair after Taxotere® or Docetaxel treatment"; and

- "Permanent/Persistent Loss of Eyebrows," "Eyelashes," "Body Hair," and "Genital Hair."

ECF No. 52-1 at 1, 17–18.

---

[2] Plaintiffs state that this "undisputed fact" is "incomplete" because the "definition for the onset of permanent alopecia is one that varies throughout the scientific community as discussed herein." ECF No. 53 at 6. But Plaintiffs expressly "incorporate[d] by reference the Master Long Form Complaint and Jury Demand" into their own Complaint. ECF No. 1 at 1. Therefore, Plaintiffs have admitted this fact and removed it from dispute. *Saghian v. Shemuelian*, 835 F. App'x 351, 353 (10th Cir. 2020) ("[A]dmissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions" (quoting *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990))); *Prograde Ammo Grp. LLC v. Perry*, No. 14-CV-00884-PAB-MEH, 2015 WL 1064266, at *4 (D. Colo. Mar. 9, 2015) ("Allegations in a complaint or counterclaim are binding judicial admissions, which can properly be entertained on a motion to dismiss.") (collecting cases).

Ms. Ditto's hair began to regrow sometime between six months and a year after completing chemotherapy, and it continued to grow thicker until 2010. ECF No. 52, ¶¶ 14–15. But since 2010, her hair has only grown in length, not in thickness. *Id.*, ¶ 15. Because her hair regrew to its thickest in 2010, Ms. Ditto has gone to the beauty salon every eight weeks to have her hair trimmed because otherwise her hair gets "stringy." *Id.*, ¶ 16. She also tried to stimulate hair growth through various methods around this time. *Id.*, ¶ 18.

Ms. Ditto has attributed her hair loss to chemotherapy. *Id.*, ¶ 17; L. Ditto Dep. at 217:8–19 ("Q: Did you attribute your lack of hair regrowth to chemotherapy [since the end of 2010]? A. I didn't know what else to attribute it to. Q. So you did attribute it to chemotherapy? A. Yes. The result of chemotherapy."). On October 5, 2011, Ms. Ditto visited her dermatologist who noted that Ms. Ditto's "alopecia after chemotherapy is persistent," but the dermatologist could not pinpoint the specific drug that caused the alopecia. ECF No. 52, ¶ 21; ECF No. 5 at 7. Ms. Ditto memorialized her dermatology appointment, writing that both she and her dermatologist had determined that her hair would not return because of chemotherapy, a determination she confirmed in her sworn testimony. ECF No. 52, ¶ 22; ECF No. 52-4 (in Ms. Ditto's handwritten notes, she writes, "hair loss from chemo[,] we have determined [hair] is not going to return"). Consequently, Ms. Ditto testified that in October 2011, it was clear that her hair would not return to its pre-chemotherapy state. L. Ditto Dep. at 232:5–8 ("Q. So in October of 2011, you thought you were not going to get your hair back from chemotherapy? A. That was becoming pretty clear.").

## II. PROCEDURAL BACKGROUND

Prior to transfer to the District of Colorado, Ms. Ditto's case was one of more than 10,000 cases pending in the *In re Taxotere (Docetaxel) Products Liability Litigation* Multidistrict Litigation (E.D. La., MDL No. 2740). The MDL cases were consolidated for pretrial purposes. Each plaintiff in the MDL alleged that they developed permanent hair loss after taking Taxotere. In May 2023, the MDL determined that no further pretrial motions were pending and therefore transferred numerous cases to the appropriate districts, including Ms. Ditto's case. ECF No. 8 (MDF Transfer Order). The Transfer Order noted that receiving courts should "expect to address case-specific motions for summary judgment on dispositive issues, such as the statute of limitations," *id.* at 45—which is the basis of Sanofi's instant motion. ECF No. 52.

On September 14, 2017, the Dittos filed suit against Sanofi in this Court. ECF No. 1 (Amended Short Form Complaint). The Dittos asserted six claims for relief: (1) strict products liability – failure to warn; (2) negligence; (3) negligent misrepresentation; (4) fraudulent misrepresentation; (5) fraudulent concealment; and (6) fraud and deceit. *Id.*, ¶ 13.[3] Plaintiff's Amended Short Form Complaint expressly "incorporates by reference the Master Long Form Complaint and Jury Demand filed in the above-referenced case on March 31, 2017." *Id.* at 1.

---

[3] Mr. Ditto purports to bring a loss of consortium claim. ECF No. 1 at 1. However, Plaintiffs do not argue any facts to suggest that his claims would accrue under a different timeline that Ms. Ditto's. Therefore, the Court assumes that the same accrual date applies to both Ms. and Mr. Ditto.

### III.  LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quotations omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670–71. If met, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts

that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citations and quotations omitted).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## IV.  ANALYSIS

Sanofi moves for summary judgment on statute of limitations grounds. ECF No. 52. The Court explains below why it agrees with Sanofi that Plaintiffs' claims are clearly time-barred.

### A.  Applicable Statute of Limitations

The parties agree that Colorado law governs this dispute. They also agree on the applicable limitation periods. ECF No. 52 at 10–12; ECF No. 53 at 9. Plaintiff's negligence and strict liability claims are subject to Colorado's two-year statute of limitations for product liability claims, Colo. Rev. Stat. § 13-80-106(1), and their fraud claims are subject to a three-year statute of limitations. Colo. Rev. Stat. § 13-80-101(1)(c).

### B.  Plaintiffs' Negligence and Strict Liability Claims

In Colorado, negligence and strict liability claims accrue "on the date both the injury and its cause are known or should have been known by the exercise of reasonable

diligence." Colo. Rev. Stat. § 13-80-108(1). "Once a plaintiff has suspicion of wrongdoing, she is under a duty to attempt to find the facts." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 887 (10th Cir. 2005) (applying Colorado law and citing *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 926–27 (Colo. 1993)). "Uncertainty as to the full extent of the damage does not stop the accrual of a cause of action." *Id.* (citing *Taylor v. Goldsmith,* 870 P.2d 1264, 1266 (Colo. App. 1994)).

"The requirement that a plaintiff use due diligence in discovering the relevant circumstance or event imposes an objective standard and does not reward denial or self-induced ignorance." *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 900 (Colo. App. 2003). "A plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations expires." *Lavarato v. Branney*, 210 P.3d 485, 489 (Colo. App. 2009). This responsibility exists even if several parties may be responsible for the plaintiff's injury. *Kohler v. Germain Inv. Co.,* 934 P.2d 867, 869 (Colo. App. 1996) (the fact that various parties may be liable for an injury does not excuse a plaintiff from the statutory obligation to exercise reasonable diligence in determining the responsible party).

The time when a plaintiff should have discovered a defendant's negligent conduct is generally a question of fact for the jury to resolve. *Colburn v. Kopit*, 59 P.3d 295, 297 (Colo. App. 2002). "But where it is shown that the plaintiff discovered, or reasonably should have discovered, the alleged tortious conduct as of a particular date, the statute of limitations issue may be decided as a matter of law." *Id.*; *see also Kohler v. Germain Inv. Co.*, 934 P.2d 867, 869 (Colo. App. 1996) ("[I]f the relevant facts and inferences are not in dispute relative to application of the statute of limitations, that question may be

resolved as a matter of law.").

Here, the relevant material facts largely are not in dispute. Ms. Ditto was administered Taxotere, albeit along with two other chemotherapy drugs, from January 21, 2009, to May 6, 2009, when she completed chemotherapy. ECF No. 52, ¶ 4. By her own admission, Ms. Ditto has experienced "permanent/persistent hair loss on her scalp" since February 5, 2009. ECF No. 52-1 at 1, 17–18. And by her own definition, her hair loss was permanent in November 2009. *See* Second Amended Master Long Form Complaint and Demand for Jury Trial, ¶ 181 (defining permanent chemotherapy-induced alopecia as the "absence of or incomplete hair regrowth *six months beyond the completion of chemotherapy*" (emphasis added)).

In addition to her own admissions, Ms. Ditto's contemporaneous notes following an October 2011 dermatology appointment shows that she understood that her hair loss was permanent. *See* ECF No. 52-4 ("[H]air loss from chemo[; the dermatologist and I] have determined is not going to return."). Eleven years later, she reaffirmed this position at her deposition. L. Ditto Dep. at 232:5–8 ("Q. So in October of 2011, you thought you were not going to get your hair back from chemotherapy? A. That was becoming pretty clear.").

Even construing the facts in the light most favorable to Plaintiffs, the record establishes that Plaintiffs knew Ms. Ditto's hair loss—the injury—was permanent by October 2011 *at the very latest*. The next issue is when Plaintiffs knew or should have known the cause of the injury. Colo. Rev. Stat. § 13-80-108(1).

Ms. Ditto's testimony makes clear that she understood her chemotherapy treatment was a cause—and likely *the* cause—of her permanent hair loss. In response to Defendants' statements of fact 17 and 19, where Defendants claimed that Ms. Ditto attributed her hair loss to chemotherapy between 2010 and 2011, Plaintiffs provided the following response: "Incomplete. Mrs. Ditto has suspicions regarding whether or not chemotherapy may have played a role in her hair loss, but Mrs. Ditto did not learn that Taxotere was the underlying cause of her permanent hair loss until 2016." ECF No. 53 at 6–7 (providing identical answers to statements of fact 17 and 19). But once Plaintiffs had a "suspicion of wrongdoing, [they were] under a duty to attempt to find the facts." *Norris*, 397 F.3d at 887. "Uncertainty as to the full extent of the damage does not stop the accrual of a cause of action." *Id.*

Stated differently, even if Plaintiffs did not know the exact cause of Ms. Ditto's injury by October 2011, the law requires that she exercise reasonable diligence to learn the cause of her injury. Colo. Rev. Stat. § 13-80-108(1). That requirement includes determining "who is liable for her injury and for doing so before the statute of limitations expires," *Lavarato*, 210 P.3d at 489, even if various parties may be liable for the injury. *Kohler,* 934 P.2d at 869 ("[T]he fact that various parties may be liable for the contamination does not excuse plaintiffs from the statutory obligation to exercise reasonable diligence in determining the responsible party.").

The exercise of reasonable diligence to uncover the cause of Ms. Ditto's injury also would have included investigating facts that were "readily ascertainable" from "publicly available" information. *Skyland Metro. Dist. v. Mtn. West Enter.*, 184 P.3d 106, 127 (Colo.

10

App. 2007). Here, there was sufficient publicly available information pointing to Taxotere as the source of Ms. Ditto's injury. The Court need only look to the Second Amended Master Long Form Complaint itself. There, the Taxotere plaintiffs cited several articles reporting a link between Taxotere and permanent hair loss: medical journals from 2006 and later; a March 2010 article from The Globe and Mail explaining that "[w]omen who took a drug to fight breast cancer say they were never warned of a side effect—permanent hair loss"; and a March 2010 CBS News article titled "Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald," where a group of women called themselves "Taxotears" after permanently losing their hair. Second Amended Master Long Form Complaint, ¶¶ 150–62. Thus, according to Plaintiffs' theory of the case, these articles describe the necessary link between Taxotere and permanent hair loss. As other courts have found, this Court finds that, had Plaintiffs exercised reasonable diligence, they would have known of Ms. Ditto's injury and its cause by October 2011 at the latest.[4] *See, e.g.*, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 393 (5th Cir. 2021) (citing these articles and finding that a reasonable inquiry by the Taxotere

---

[4] The Court also finds that Plaintiffs have essentially admitted that reasonable diligence would have uncovered these articles and studies by citing them in the Second Amended Master Long Form Complaint. *See Ali*, 2023 WL 6390592, at *5 (finding Taxotere plaintiff, through the master complaint, "admitted with reasonable diligence she could have discovered a link between her unexpected hair loss and Taxotere"); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-cv-696, 2023 WL 7115575, at *4 (N.D. Ala. Oct. 27, 2023) (finding that Taxotere plaintiff "plead h[er]self out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling" (quoting *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc))); *see also Saghian*, 835 F. App'x at 353 (10th Cir. 2020) ("[A]dmissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." (quotation and citation omitted)). Thus, Plaintiffs' arguments to the contrary are unavailing. *See* ECF No. 53 at 14 (arguing that "publicly available scientific journal articles, designed and intended for physicians, should not give rise to notice sufficient to trigger the statute of limitations on the part of Mrs. Ditto").

plaintiffs would have uncovered these articles); *Ali v. Sanofi-Aventis U.S. LLC*, No. 3:23-CV-02694-JSC, 2023 WL 6390592, at *5 (N.D. Cal. Sept. 29, 2023) (same).[5]

The law, at times, is unforgiving. But here, the standard is what Plaintiffs knew or should have known by the exercise of reasonable diligence. Colo. Rev. Stat. § 13-80-108(1). And the material facts of when Plaintiffs learned of Ms. Ditto's injury largely are not in dispute. Even construing the facts in the light most favorable to Plaintiffs, the record plainly shows that they had a "suspicion of wrongdoing" within two years of her chemotherapy. Had Plaintiffs employed reasonable diligence to investigate the suspected wrongdoing in 2011 (if not earlier), all roads would have led to Defendants, the manufacturer of Taxotere, as a cause, and likely *the cause*, of Ms. Ditto's injury. Because Plaintiffs did not file suit until 2017, over six years after learning of Ms. Ditto's injury and the likely cause of that injury, Plaintiffs' negligence and strict liability claims are time-barred by Colorado's two-year statute of limitations. *See* Colo. Rev. Stat. §§ 13-80-106(1), 13-80-108(1).

### C.  Plaintiffs' Fraud Claims

Plaintiffs' fraud claims accrued on the date the alleged fraud was "discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(3). Defendants characterize Plaintiffs fraud claims as "repackaged failure-

---

[5] The Court must also reject Plaintiffs' argument that they could not have known of a causal link between Taxotere and Ms. Ditto's hair loss because causation remains the subject of expert dispute in this case. ECF No. 53 at 14–16. Plaintiffs cite no authority for this position, *see id.*, and the Court doubts there is any. That is because such a rule would likely lead to absurd results: injury claims would not accrue until a defendant conceded causation.

to-warn claims" because Defendants allegedly concealed the risk of permanent hair loss associated with Taxotere.

Like Plaintiffs' negligence and strict liability claims, the Court finds that Plaintiffs' fraud-based claims began to accrue no later than October 2011. By then, she was aware of the injury and the cause. Even if Defendants did fraudulently conceal or misrepresent the side effects of Taxotere as Plaintiffs alleges, the law required Plaintiffs to exercise reasonable diligence to discover the fraud. Colo. Rev. Stat. § 13-80-108(3). She did not do so. The Court has already explained why it concluded that a harmed person in Ms. Ditto's situation could have discovered the cause of the injury as early as 2010. *See* Second Amended Master Long Form Complaint, ¶¶ 150–62 (citing articles from March 2010 and earlier linking Taxotere to permanent hair loss). Although it will not repeat that analysis here, those findings apply with equal force to Plaintiffs' fraud claims. Because Plaintiffs did not file their lawsuit until September 2017—long after the three-year statute of limitations expired on their fraud claims—their claims are time-barred.

### D.   Equitable Tolling

Plaintiffs argue that their fraud-based claims are not time-barred because, under the equitable tolling doctrine, Defendants fraudulently concealed the cause of injury. ECF No. 53 at 17 (making this argument with respect to her fraud claims but not her other claims). The Court is not persuaded.

The principle underlying equitable tolling is intended to prevent a defendant from benefiting from its own wrongdoing. *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096–97 (Colo. 1996). The doctrine is also intended to avoid penalizing a plaintiff

for circumstances beyond the plaintiff's control. *Id.* (citing cases from the Civil War era and World War II, including *Osbourne v. United States,* 164 F.2d 767 (2d Cir. 1947), where the Second Circuit held that the plaintiff's internment by Japan during World War II tolled limitations period on the plaintiff's claim arising immediately prior to his internment). Accordingly, "an equitable tolling of a statute of limitations is limited to situations in which either [a] the defendant has wrongfully impeded the plaintiff's ability to bring the claim or [b] truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Id.* at 1099.

Plaintiffs invoke the first justification of the tolling doctrine. Statute of limitations may be tolled by fraudulent concealment if Plaintiffs can show the following five elements:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011) (citation omitted). In addition to these five elements, the Colorado Supreme Court has counseled that "a limitation period should not be tolled for fraudulent concealment unless a plaintiff 'is unable, by reasonable diligence, to discover the facts necessary for determining the existence of a claim for relief.'" *Id.* (quoting *First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp.,* 744 P.2d 1197, 1200 (Colo.1987)).

Plaintiffs, however, have not produced any evidence showing Defendants wrongfully impeded their ability to file their lawsuit earlier. Nor have they shown that there

14

were extraordinary circumstances impeding their ability to file a timely claim. Consistent with the Court's findings above, there is no basis to equitably toll the statute of limitations. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d at 395 (finding that the Taxotere plaintiffs could not show that Sanofi prevented the plaintiffs from availing themselves of their cause of action); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-cv-696, 2023 WL 7115575, at *4 (N.D. Ala. Oct. 27, 2023) (finding that the Taxotere plaintiff was not entitled to equitable tolling because the articles cited in the Master Complaint suggested that the plaintiff "could have discovered her cause of action through reasonable diligence").

* * *

In sum, the Court finds the absence of a genuine dispute of material facts as to when Plaintiffs' claims began to accrue. The following timeline of undisputed facts bears this out.

- **November 12, 2008**: Ms. Ditto was diagnosed with breast cancer.

- **January 21, 2009–May 6, 2009**: Ms. Ditto was administered Taxotere as part of her chemotherapy regimen.

- **February 5, 2009**: Since February 5, 2009, to the present, Ms. Ditto has experienced persistent total alopecia, persistent alopecia of her head, permanent/persistent hair loss on her scalp, diffuse thinning of hair on her scalp, changes in the texture and thickness of her hair, and permanent/persistent loss of her eyebrows, eyelashes, body hair, and genital hair.

- **March 2010**: Two articles which the Taxotere plaintiffs cite in their Second Amended Master Long Form Complaint are published. The first is from The Globe and Mail. That publication explained that "[w]omen who took a drug to fight breast cancer say they were never warned of a side effect—

15

> permanent hair loss." The second article, titled "Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald," is a CBS News article describing a group of women who called themselves "Taxotears" after permanently losing their hair following chemotherapy.

- ➢ **October 5, 2011**: Ms. Ditto visited her dermatologist who noted that her "alopecia after chemotherapy is persistent," but the dermatologist could not pinpoint the specific drug that caused the alopecia. Ms. Ditto memorialized her dermatology appointment, writing that both she and her dermatologist had determined that her hair would not return because of chemotherapy. She documented this in a handwritten note. *Thus, Plaintiffs' claims began to accrue, at the latest, by October 5, 2011*. Put another way, by this time, Plaintiffs knew or should have known about Ms. Ditto's permanent hair loss and its cause.

- ➢ **October 5, 2013**: The statute of limitations expired on Plaintiffs' negligence and strict liability claims.

- ➢ **October 5, 2014**: The statute of limitations expired on Plaintiffs' fraud-based claims.

- ➢ **September 14, 2017**: Plaintiffs filed their lawsuit, four years too late for their negligence and strict liability claims, and three years too later for their fraud claims.

As illustrated above, Plaintiffs' claims are time-barred.

### E.   Amendment of Pleadings

Defendants argue that permitting Plaintiffs leave to amend their Complaint would be futile because Ms. Ditto's sworn testimony in the case makes clear that Plaintiffs knew of Ms. Ditto's injury and its cause by at least 2011—six years before filing their lawsuit. ECF No. 52 at 18. Plaintiffs did not respond to this argument other than stating that "any deficiencies in pleadings may be resolved through an amended complaint." ECF No. 53 at 21. However, they do not explain how they could cure their timeliness deficiencies.

When a party files a proper motion for leave to amend, Federal Rule of Civil Procedure 15(a) provides that leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185 (10th Cir. 1999). District courts, however, may "deny leave to amend where amendment would be futile." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)).

Here, the Court finds that amendment would be futile, as Ms. Ditto's deposition testimony and the entire record demonstrate that Plaintiffs' claims began to accrue by October 2011 at the latest. Thus, Plaintiffs were required to file their negligence and strict liability claims by October 2013 and their fraud claims by October 2014. Because Plaintiffs did not do so until September 2017, no amendment could cure this deficiency, and the Court will dismiss their Complaint with prejudice. *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims as barred by the statute of limitations); *McGowan v. Wal-Mart Stores*, 757 F. App'x 786, 788 n.3 (10th Cir. 2019) ("A dismissal based on timeliness would ordinarily be with prejudice.").

## V.     CONCLUSION

The undisputed evidence establishes that the Dittos knew of Ms. Ditto's injury and its cause by 2011 at the very latest. Because the Dittos did not file suit until 2017, their claims are barred by the applicable statute of limitations. Therefore, the Court must GRANT Sanofi's Motion for Summary Judgment. ECF No. 52. The Clerk of Court is

directed to close this case.

DATED this day of 9th day of April 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge